IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

FREEMAN FAMILY RANCH, LTD, )
)
                Plaintiff, )
)
v. )   Case No. CIV-07-1085-D
)
MAUPIN TRUCK SALES, INC., *et al.*, )
)
                Defendants. )

**O R D E R**

Before the Court are separate motions filed by Defendants Maupin Truck Sales, Inc. ("Maupin") and Morhlang Manufacturing, Inc. ("Mohrlang") under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to exclude the testimony of Plaintiff's engineering expert, Troy Little. Each motion is combined with a motion for summary judgment under Fed. R. Civ. P. 56 on Plaintiff's asserted claims of negligence and manufacturer's products liability. *See* Am. Compl. [Doc. No. 26].[1] The motions are fully briefed and at issue.

**Statement of Undisputed Facts**

In September, 2005, Plaintiff purchased from Maupin a 2006 Sterling truck to be used in ranch feeding operations. The truck included an after-market air conditioning unit installed by Maupin's employee, Paul Keller. When installing the unit, Mr. Keller mounted the condenser to the frame of the truck at the rear of the cab and mounted other parts (evaporator, temperature control, and power switch) between the seats inside the cab. Mr. Keller testified during his deposition that he installed the air conditioning unit according to written instructions that accompanied it, including

---

[1] The Amended Complaint names seven defendants. However, Plaintiff has voluntarily dismissed Bruce Mohrlang, Doug Thomas, Gretchen Thomas, and Harry Mohrlang. One defendant, MMI Holdings, LLC, is in default. However, the entity was sued only as a possible successor to Mohrlang Manufacturing, Inc. *See* Am. Compl. [Doc. 26] at 2, ¶ 12.

wiring diagrams that required the installation of four or five fuses. Plaintiff separately purchased from Mohrlang a motorized mixer feeder unit that was installed on the truck by one of Mohrlang's employees. The mixer feeder box was installed on the truck chassis and a control panel was installed inside the truck cab adjacent to the right side of the driver's seat, mounted on a metal pole affixed to the floor. Electrical wires ran from the control panel to the unit and to the truck's battery through an access hole in the back wall of the cab. The battery was located on the driver's side of the truck, below the cab and behind the fuel tank and entry step into the cab. Mohrlang's employee, David Harms, testified that he remembered Plaintiff's unit but did not recall specifically installing it; he testified regarding the usual method of installation and his belief that Plaintiff's unit was wired in the usual manner, which included fuse-protected wires.

On January 29, 2006, a fire occurred while the truck was parked inside a building on Plaintiff's property. The fire consumed the truck and the attached mixer feeder, the building, two other vehicles, and other contents of the building. On the day of the fire, Plaintiff's employees had used the truck to feed cattle in the morning, had loaded the next day's feed ration into the mixer feeder, and had left the truck parked with the ignition off for approximately six hours before the fire was observed. The air conditioner was not used that day. The burning truck was discovered by Plaintiff's employee, Albert Berg, who first saw flames in the engine compartment of the truck on the driver's side. The only problem Plaintiff had experienced with the truck before the fire was a starting problem that had developed approximately two weeks earlier. After the fire, Plaintiff purchased a replacement truck from Maupin that also had an after-market air conditioning unit, but the installation was not performed by Mr. Keller. The replacement truck had a different, Rotomix feeder unit that was not installed by Mohrlang.

The fire was investigated in 2006 by Randolph Harris, who has been retained in this case as an expert for Maupin.[2] The fire was investigated in 2007 by David Pierce, an associate of Mr. Little's firm. Mr. Little and Mohrlang's expert, Marcus Durham, conducted investigations in September and October, 2008, respectively.[3] As part of their investigations, both Mr. Little and Mr. Durham inspected the replacement truck and two other trucks owned by Plaintiff that were equipped with Mohrlang mixer feeders – a newer Kenworth truck and an older Ford truck. The replacement truck did not have fuses installed in the wiring to the air conditioner or to the Rotomix feeder. The Ford truck did not have fuses in the wiring to the Mohrlang unit, but the Kenworth truck did have such fuses. Defendants' experts either could not accurately determine the cause of the fire ( Mr. Harris)[4] or determined that the origin of the fire was in front of the starter (Mr. Durham).

Mr. Little concludes in his opinion that the fire originated at the rear of the truck cab and spread to the engine compartment. Mr. Little also concludes: "It is more probable than not that the fire occurred due to compromised insulation on wiring installed by either Maupin or Mohrlang or both." *See* Little Report [Doc. No. 67-2] at 3. He further states: "Additionally, it is probable that fuses were not present in the aftermarket wiring installed by Maupin or Mohrlang or both." *Id*. A lack of fuses would be inconsistent with industry standards.

---

[2] Mr. Harris examined the truck in April and June, 2006, with another investigator, David Dallas, who was a consultant for Plaintiff but was not retained for this litigation.

[3] Mr. Little relied on the investigations of Mr. Dallas and Mr. Pierce in reaching his conclusions. Mr. Little states that the reliance on investigations performed by others is a generally accepted practice.

[4] Mr. Harris made a preliminary report in 2006 indicating a likely cause to be an electrical short circuit. In his final report, he found "very suspect areas" of melted and arced wires on the driver's side of the engine compartment, but could not prove these areas were the cause. He found "no indication" the fire originated from an electrical short circuit at the rear wall of the cab. *See* Harris Report [Doc. 73-2] at 7. He testified in his deposition that if the fire originated in the truck, "the only real cause there is a still energized wire." Harris Dep. 43:22-44:1.

## Admissibility of Expert Testimony[5]

Defendants challenge the admissibility of Mr. Little's expert opinions regarding alleged wiring defects in the truck and the cause and origin of the fire. Although Mr. Little's qualifications are undisputed, Defendants question whether Mr. Little's expert opinions are reliable and relevant.[6]

**1.      Standard of Decision**

Rule 702 codifies the Supreme Court's decision in *Daubert* and sets forth the standard for admissibility of expert opinion testimony. As part of its gate keeping function, this Court must determine whether "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Reliability under *Daubert* is determined by looking at "whether the reasoning or methodology underlying the testimony is scientifically valid," and relevance is determined by "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

In determining the reliability of expert testimony, there are several nonexclusive factors that the court may consider, including (1) whether the expert's theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3)

---

[5] The admissibility of Plaintiff's evidence must be decided before the summary judgment issues because in assessing a Rule 56 motion "a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); *see Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006); *see also Thomas v. International Business Mach.*, 48 F.3d 478, 485 (10th Cir. 1995).

[6] Maupin also argues that no expert knowledge or experience is needed to determine certain factual issues, such as the credibility of witnesses or whether the installation of wiring was negligent, and Mr. Little should not be permitted to testify in these areas. To the extent Mr. Little disregarded certain testimony or evidence in formulating his opinion because he found the testimony to be inconsistent with other evidence, he should be permitted to explain the reasons for his assessment. Further, although he should avoid stating a conclusion that certain conduct was "negligent," Mr. Little can testify as to whether the wiring of the truck was consistent with industry standards, if his testimony is otherwise admissible.

the known or potential rate of error of the technique or theory, and (4) the general acceptance of the theory or technique. *Id.* at 592-94. However, a trial court has broad discretion to consider other factors in determining the reliability of the proffered expert testimony. *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). A party sponsoring expert testimony "need not prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community. Instead, the [party] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004) (internal quotations and citations omitted).

**2.    Methodology**

Defendants assert that Mr. Little's opinion testimony is inadmissible because it is "connected to the existing data only by the *ipse dixit* of the expert." *See General Elec. v. Joiner*, 522 U.S. 136, 146 (1997). Specifically, Defendants contend Mr. Little's opinions regarding their installation of wiring to the after-market devices they added to the truck lack a factual basis because he assumed facts different from those to which Defendants' employees testified in their depositions concerning their work and because he relied on exemplar vehicles that contained devices installed by others. Defendants also contend Mr. Little has no basis for his opinion regarding causation.

Mr. Little, like Defendants' experts, has testified that he employed a recognized method of fire investigation, according to a *Guide for Fire and Explosion Investigations*, NFPA 921, published by the National Fire Protection Association. *See* Little Dep. 120:1-4; *see also* Durham Report [Doc. No. 71-2] at 1. The Court finds Mr. Little's testimony and affidavit concerning his adherence to this

5

accepted methodology to be sufficient. If believed, Mr. Little applied the same method of fire investigation as the other experts; he simply reached a different conclusion. Defendants' real criticism seems to be the "fit" between Mr. Little's conclusions and the facts of the case. *See Daubert*, 509 U.S. at 591.

### 3. Application to Record Facts

Defendants contend Mr. Little's opinions are unreliable because his conclusions ignore known facts and require too much of an "analytical leap." With respect to causation, the Court agrees.

Plaintiff does not dispute the following facts stated by Maupin: "Little concluded that one of two wires, photographed and depicted in Exhibits 48, 49 and 50, were [sic] the initial cause of the fire" but "Little could not tell which of the two wires may have initiated the fire." *See* Maupin's Br. [Doc. No. 107], at 8, ¶ 4; at 9, ¶ 10; Pl.'s Resp. Maupin's Mot. [Doc. No. 97] at 2, ¶ A (admitting ¶¶ 4, 10). Because the only wires located at the rear of the cab were installed by Maupin and Morhlang, Mr. Little opines that one or <u>both</u> of Defendants were responsible. However, Mr. Little provides no explanation, even in the affidavit he supplied in opposition to the motions for summary judgment, that would support a conclusion that <u>both</u> Defendants were responsible for the wires. Rather, Mr. Little's conclusion is that the exact source of the fire cannot be determined, but the most probable source is electrical wiring installed by a defendant. *See* Little Dep. 110:1-14, 176:20-23. The Court thus finds Mr. Little's opinion that the conduct or product of both Defendants caused the fire is unsupported by the record facts. This part of his opinion is unreliable and should be excluded.

As to negligence or defect, however, Mr. Little's conclusion that the wiring of the aftermarket products added to the truck was "substandard" is based on his conclusion that no fuses were installed. The conclusion that the wiring lacked fuses is based, in part, on examinations of the

6

burned truck, other "exemplar" trucks with similar aftermarket products, and his knowledge that metal parts of fuses would have survived the fire. Defendants criticize this conclusion because it disregards the testimony of their employees regarding how the installations were done and ignores other facts, such as differences between the exemplar trucks and the burned truck and deterioration of the burned truck before experts examined it. The Court finds, however, that these criticisms go to the weight of Mr. Little's opinion and not the admissibility of it. The Court notes that other experts, like Mr. Little, also considered the exemplar trucks in their analysis and relied on pictures and reports of earlier examinations. Here, as in *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1238 (10th Cir. 2004), the argument concerning the "fit" between an expert's opinion and the facts of the case "confuses a *Daubert* inquiry . . . with the jury question of which theory, plaintiffs' or defendants' best captures the truth of the matter at issue." This Court, like the court of appeals in *Bitler*, finds that "the expert testimony 'fits' because it involves a reliable method that would aid the jury in resolving a factual dispute." *Id*.

Therefore, the Court finds that Mr. Little's expert testimony should, for the most part, be admitted. However, Mr. Little's opinion that the wiring of both Defendants caused the fire must be excluded as unreliable.

## Summary Judgment

Defendants challenge the sufficiency of Plaintiff's evidence to establish Defendants' liability under Plaintiff's theories of manufacturers products liability and negligence.

### A. Standard of Decision

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A material fact is one that is essential to proper disposition of a claim, and a genuine issue is one that a rational trier of fact could resolve either way. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a genuine factual issue warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

### B. Negligence

To prevail under a negligence theory, Plaintiff must establish that Defendants' conduct in installing an air conditioner (Maupin) and a mixer feeder (Mohrlang) on the truck was negligent and that Defendants' negligence was a direct cause of the fire. Plaintiff's expert, Mr. Little, opines that Defendants incorrectly installed electrical wiring for the after-market products they added to the

8

truck. However, Mr. Little could not determine which wiring – Maupin's or Mohrlang's – caused the fire. Therefore, Defendants contend that Plaintiff cannot prevail on a negligence theory due to lack of proof of causation.[7]

Plaintiff admits that the wires at issue were "burnt to such a degree that its [sic] impossible to tell which of the wires arced first causing the harm." *See* Pl.'s Resp. Mohrlang's Mot. [Doc. No. 96] at 11. Because Plaintiff cannot identify which of the allegedly negligent parties caused the fire, Plaintiff urges the doctrines of alternative liability and *res ipsa loquitur* to establish the necessary causal link. *See* Pl.'s Resp. Maupin's Mot. [Doc. No. 97] at 22-27; Pl.'s Resp. Mohrlang's Mot. [Doc. No. 96] at 11.[8]

### 1. Alternative Liability

The California Supreme Court first recognized the doctrine of alternative liability in *Summers v. Tice*, 99 P.2d 1 (Cal. 1948), a case in which two hunters negligently fired shotguns in the plaintiff's direction and one bullet struck the plaintiff. *See Summers*, 199 P.2d at 4. Under the doctrine, if a plaintiff can show a harm was caused by one of multiple negligent defendants, the burden shifts to the defendants to prove they did not cause the harm, and in the absence of such proof, the defendants may be held jointly liable. The Oklahoma Supreme Court utilized the doctrine in *Hood v. Hagler*, 606 P.2d 548 (Okla. 1979), and applied the burden-shifting rule of *Summers* to an "analogous situation" where a woman was attacked by two dogs whose owners had both acted negligently and one dog bit the plaintiff. The Oklahoma Supreme Court held that use of the doctrine

---

[7] Defendants also argue that Plaintiff lacks proof of negligence in their installations, but as discussed above, Plaintiff relies on Mr. Little's testimony to show negligent conduct by Defendants.

[8] In argument regarding alternative liability, Plaintiff also cites cases applying other theories that have no application under the alleged facts, such as the principle of joint liability of concurrent tortfeasors whose independent acts produce a single, indivisible injury. *See* Pl.'s Resp. Maupin's Mot. Summ. J. [Doc. 97] at 25-26 (discussing *Lee v. Volkswagen*, 688 P.2d 1283 (Okla. 1984)).

9

was warranted because "both dogs were involved in the attack [and b]oth defendants allowed their dogs to run freely." *Hood*, 606 P.2d at 553.

Accepting Plaintiff's facts and evidence and viewing all inferences in its favor, as required by Rule 56, the Court finds that the theory of alternative liability may be applied under the circumstances presented. The doctrine is designed to remedy the injustice of preventing a recovery due to a failure of proof when two defendants act in a negligent manner, the act of one causes an injury to an innocent third party, and the precise act causing the injury cannot be determined. In this case, if the jury finds that both Defendants acted negligently in the installation of wiring behind the cab and that the fire originated from the wiring in this area (all of which was installed by Defendants), then the burden of proving causation should be shifted away from the injured party for policy reasons underlying the doctrine of alternative liability:

> The *Summers* burden shift seems intuitively fair where all those who could have caused the injury are before the court and the odds are equal and significant that each is liable and to the same degree. If none can prove nonliability, then all can fairly be held jointly and severally liable. Even if, ultimately, one is required to pay for the entire injury, judgment against one defendant alone may not be fundamentally unfair since the odds are equally high that he caused the entire injury.

*Menne v. Celotex Corp.*, 861 F.2d 1453, 1466 (10th Cir. 1988).

Therefore, the Court finds that Plaintiff has demonstrated the existence of a genuine dispute of material facts that precludes summary judgment on Plaintiff's negligence claim under an alternative liability theory of proof.

## 2. *Res Ipsa Loquitur*

"The doctrine of *res ipsa loquitur* is a rule which, if applicable, allows an inference of negligence of the defendant from the mere fact that an accident happened." *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 190 (Okla. 1992) (citing *Sisson v. Elkins*, 801 P.2d 722, 724 (Okla. 1990)). "Whether a case is fit for the application of *res ipsa loquitur* presents a question of law. It is a judicial function to determine if a given inference may be drawn from a proffered set of circumstances." *Harder v. F.C. Clinton, Inc.*, 948 P.2d 298, 303 (Okla. 1997); *Qualls v. U.S. Elevator Corp.*, 863 P.2d 457, 460 (Okla. 1993).

The inference permitted by the *res ipsa loquitur* doctrine may be justified where direct proof of the defendants' negligence is not available to a plaintiff; it is inapplicable where proof is available but what the plaintiff lacks is proof of responsibility. *See Flick v. Crouch*, 555 P.2d 1274, 1277-78 (Okla. 1976); *Mitchell v. Cox*, 948 P.2d 317, 321 (Okla. 1997) (Simms, J., concurring). "Before the doctrine of *res ipsa loquitur* may be invoked to justify the inference of negligence on the part of the defendant, the plaintiff must prove what caused the damage, and that the 'thing' causing said damage was under the control or management of the defendant or his servants, since the doctrine does not go to the extent of implying that one may, from the mere fact of injury, infer what physical act produced the injury." *Champlin Refining Co. v. George*, 76 P.2d 895 (Okla. 1938) (syllabus by the court); *accord Seay v. General Elevator Co.*, 522 P.2d 1022, 1027 (Okla. 1974); *Briscoe v. Oklahoma Natural Gas Co.*, 509 P.2d 126, 128 (Okla. 1973).

In this case, Plaintiff contends the application of *res ipsa loquitur* is justified because "spontaneous combustion of [a four-month-old] motor vehicle is not something that happens in the absence of negligence or a defect in the product." *See* Pl.'s Resp. Maupin's Mot. Summ J. [Doc. 97] at 23. Plaintiff argues that its evidence shows a wire at the rear of the truck cab sparked the fire

and the wire was in the exclusive control of Maupin and Morhlang because they were the only ones who had serviced the truck. Plaintiff relies on *Qualls* in which an elevator fell and injured a passenger. The passenger was permitted to invoke the doctrine against the hospital where the elevator was located (whose employees inspected it daily and had added oil) and, alternatively, the elevator maintenance company who had manufactured and installed it and was responsible for its repair. This was permissible because the passenger presented "two alternative fact versions – one that would place exclusive control in the Hospital and the other in U.S. Elevator." *Qualls*, 863 P.2d at 463.[9]

Upon consideration of the summary judgment record, the Court finds that Plaintiff lacks proof of the "fundamental element" of the evidentiary process of *res ipsa loquitur*, namely, "'the control of the instrumentality' which caused the damage." *Mitchell v. Cox*, 948 P.2d 317, 319 (Okla. 1997). Even viewing the facts and evidence in the light most favorable to Plaintiff, as required by Rule 56, Plaintiff has failed to provide any support for the proposition that Defendants were in exclusive control – either alternatively or jointly – of the thing that caused the fire. Plaintiff has focused its negligence case on the theory that an energized, unfused wire at the rear of the cab of the truck failed for some reason and that electrical arcing sparked a fire of combustible materials. However, Plaintiff cannot identify where the wire was located – the air conditioner installed by Maupin or the mixer feeder installed by Mohrlang. Plaintiff presents no basis to conclude that either

---

[9] Very recently, in an opinion not yet released for publication in permanent law reports, the Oklahoma Supreme Court extended *Qualls* to a negligence action against a drilling contractor who owned a drilling rig and was responsible for a rigging-up procedure in which part of the rig fell on a bulldozer and injured the bulldozer operator. *See Deweese v. Patterson UTI Drilling Co.*, No. 101686, 2010 WL 487151 (Okla. Feb. 9, 2010) (to be published). The court found that, on the record presented, a jury could find that the drilling contractor had exclusive control over the entire rigging-up operation and the rig, including the fallen component, and thus the plaintiff was entitled to proceed under a *res ipsa loquitur* theory, even though he could not identify a single negligent act or single actor that caused the accident.

defendant was responsible for the after-market product sold, or installation performed, by the other, and Plaintiff has no proof as to which thing caused the fire. Moreover, the undisputed facts reflect that Plaintiff and its employees had been in possession of, and had been operating, the truck for several months prior to the fire. In the absence of any proof that either defendant had exclusive control over the instrumentality that caused the fire, Plaintiff cannot rely on the doctrine of *res ipsa loquitur* to prove Defendants' negligence caused Plaintiff's injury.

### 3. Conclusion Regarding Negligence Claim

Because Plaintiff has come forward with sufficient evidence, if accepted by the jury, to prevail on its negligence theory under the doctrine of alternative liability, Maupin and Mohrlang are not entitled to summary judgment on Plaintiff's negligence claim.

### C. Products Liability

Like negligence, Plaintiff's theory of strict products liability requires proof of a causal link between the allegedly defective product and the injury sustained. Plaintiff argues in opposition to Mohrlang's motion for judgment on the products liability claim that it need not "prove the specific defect which caused the injury." *See* Pl.'s Resp. Mohrlang's Mot. Summ. J. [Doc. 96] at 12. However, Oklahoma law is clear that to prevail on a products liability claim, a plaintiff "must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough." *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974). Here, the theory of products liability argued in Plaintiff's summary judgment briefs is that a product supplied by Maupin (the truck or the air conditioner) and a product supplied by Mohrlang (the mixer feeder) were both defective.[10] As with its negligence claims, lacking proof as to which defective product

---

[10] For the purpose of opposing Maupin's Motion, Plaintiff is willing to assume Mohrlang's expert may be correct in his opinion that a defective starter in the truck caused the fire.

13

caused its injury, Plaintiff also relies on the theories of alternative liability and *res ipsa loquitur* to prove causation with regard to its products liability claims.

  **1.  Alternative Liability**

  Plaintiff candidly admits that the Oklahoma Supreme Court has not decided the question of whether to extend the doctrine of alternative liability to products liability cases. *See* Pl.'s Resp. Maupin's Mot. Sum. J. [Doc. 97] at 28. The Tenth Circuit has determined, however, that the Oklahoma Supreme Court would not extend the doctrine in this manner. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). The Tenth Circuit relied, in part, on the fact that the court rejected various theories of collective liability in *Case v. Fibreboard Corp.*, 743 P.2d 1062, 1064 (Okla. 1987), an asbestos case in which no specific product was identified and the plaintiffs sought to avoid proof of causation for public policy reasons. Although the court primarily discussed a market share theory of liability, it expressly found the theory of alternative liability to be inapplicable as well. *Id*. at 1067. To date, the Oklahoma Supreme Court has not revisited the issue.

  This Court is bound by the holding of *Wood*. "'[W]hen a panel of [the Tenth Circuit] has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.'" *Henrie v. Northrop Grumman Corp.*, 502 F.3d 1228, 1231 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). Plaintiff points to no decision of the Oklahoma Supreme Court or the Tenth Circuit that draws into question the validity of *Wood*, and this Court is aware of none. Therefore, the Court must conclude that Plaintiff cannot rely on a theory of alternative liability to prove its products liability claim.

## 2. *Res Ipsa Loquitur*

Likewise, as to *res ipsa loquitur*, Plaintiff admits that the Oklahoma Supreme Court has not extended the doctrine to products liability cases. *See* Pl.'s Resp. Maupin's Mot. Summ. J. [Doc. 97] at 22-23. The Oklahoma Supreme Court expressly observed in *Dutsch v. Sea Ray Boats, Inc*., 845 P.2d 187, 190 (Okla. 1992): "In Oklahoma the doctrine has never been applied to a case based on manufacturer's products liability." This statement remains true today. Moreover, for reasons discussed above, application of the doctrine would not be appropriate under the alleged facts and evidence.

## 3. **Conclusion Regarding Products Liability Claim**

To prevail on its products liability claim, Plaintiff must prove that a product manufactured or sold by a defendant was defective when it left the defendant's control and that the defective product was the direct cause of Plaintiff's injury. *See Dutsch*, 845 P.2d at 190. Plaintiff argues, based on Mr. Little's expert opinion, that there was a defect in the air conditioner installed by Maupin, making the truck defective when it left Maupin's control, and a defect in the mixer feeder installed by Mohrlang, making the truck defective when it left Mohrlang's control. However, Plaintiff cannot prove, based on Mr. Little's opinion, which of these alleged defects caused the fire and Plaintiff's loss of property. Therefore, Plaintiff cannot prevail on its products liability claims against Defendants utilizing Mr. Little's testimony.

Plaintiff presents an alternative argument, based on the testimony of witnesses regarding a malfunction in the starter of the truck, that the starter was defective, and based on the expert opinion of Mohrlang's witness, Mr. Durham, that the defective starter was the cause of the fire and Plaintiff's injury. *See* Pl.'s Resp. Maupin's Mot. Summ. J. [Doc. 97] at 21-22. This argument might establish liability of Maupin, as the distributor of the manufacturer's product, under Oklahoma law.

*See Braden v. Hendricks*, 695 P.2d 1343, 1350 (Okla. 1985); *see also Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1210 (10th Cir. 2006). However, Plaintiff presents no facts to suggest that a defect existed in the starter of the truck at the time it left the manufacturer's control. Therefore, Plaintiff cannot prevail on its product liability claim against Maupin utilizing Mr. Durham's testimony.

**Conclusion**

For the above reasons, the Court finds that Plaintiff has failed to demonstrate the existence of a genuine dispute of material facts that precludes summary judgment on any theory of Defendant's liability except Plaintiff's claim of negligence based the doctrine of alternative liability.

IT IS THEREFORE ORDERED that Defendant Maupin Truck Sales, Inc.'s Motion to Exclude Expert Testimony [Doc. No. 88] and Defendant Mohrlang Manufacturing, Inc.'s Motion to Exclude the Testimony of Troy Little [Doc. No. 90] are GRANTED in part and DENIED in part as set forth above.

IT IS FURTHER ORDERED that Defendant Maupin Truck Sales, Inc.'s Motion for Summary Judgment [Doc. No. 88] and Defendant Mohrlang Manufacturing, Inc.'s Motion for Summary Judgment [Doc. No. 90] are GRANTED in part and DENIED in part as set forth above. The case will proceed to trial only on Plaintiff's claim of negligence under an alternative liability theory of proof.

IT IS SO ORDERED this 9th day of March, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE